## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PRIME MORTGAGE FINANCIAL, INC. | ) | Chapter 7 |
|     Debtor | ) | Case No. 08-40238-MSH |
| _____ | ) | |
| | ) | |
| DAVID M. NICKLESS, TRUSTEE, | ) | Adversary Proceeding |
|     Plaintiff | ) | No. 09-04045 |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL GOLF CLUB, LLC, | ) | |
| PRIME TITLE SERVICES, INC., and | ) | |
| PRIME FINANCIAL, INC., | ) | |
|     Defendants | ) | |
| _____ | ) | |

### MEMORANDUM OF DECISION

This adversary proceeding involves a dispute between plaintiff, who is the Chapter 7 trustee of the estate of the debtor in the main case, Prime Mortgage Financial, Inc. (the "Debtor"), and defendant, Prime Financial, Inc. ("PFI"), an affiliate of the Debtor. The dispute is over the rights to a refund of $62,500 from co-defendant, International Golf Club LLC ("The International") arising from the cancellation of a country club membership.

This matter was tried before me on June 23, 2010. Prior to trial The International was dismissed as a party upon its agreeing to pay over the disputed refund to whichever of the remaining parties emerged victorious at trial. As to the third defendant, Prime Title Services, Inc., an agreement for judgment in favor of plaintiff and against it had entered on August 25, 2009. At trial the evidence consisted of live testimony, agreed upon documents and an agreed statement of facts.

**Findings of Fact**

On July 1, 2003, the Debtor paid to The International $125,000 as a membership deposit and contemporaneously William J. Poutre, at the time a director and substantial shareholder of both the Debtor and PFI, submitted to The International a Membership Agreement and Application (the "Membership Agreement"). While the Membership Agreement sought a corporate membership at The International, the section entitled "Applicant Information" listed Mr. Poutre as the applicant. In a section of the Membership Agreement entitled "Mailing Information" Mr. Poutre listed PFI as the business to which communications from The International should be directed. The International approved the Membership Application and established a corporate country club membership in the name of PFI.

The Membership Agreement provides that at the option of the applicant 50% of the membership deposit ($62,500) was refundable upon resignation of the member. However, the Agreement does not specifically address to whom the refund is paid.

On August 19, 2004, Aris Pappas in his capacity as president and CEO of the Debtor sent a letter to counsel for The International notifying The International that its membership records listing PFI as member were incorrect and that the correct member name should be that of the Debtor. The International notified Mr. Poutre of the Debtor's request. Poutre, who, having had a falling-out with Mr. Pappas, no longer participated in the active management of the Debtor but retained control of PFI, objected to any change in the membership records and no change in the records was ever effected. Therefore, at all times relevant to this action, according to the records of The International PFI was its corporate member. However, as testified to by Brian Lynch, who served as executive vice president and general manager of The International for 25 years,

there was no requirement that the member and the payor/owner of the membership deposit be one and the same individual or entity.

In addition to the membership deposit, members of The International were required to pay annual dues. At all times relevant to this action, the Debtor paid the annual dues to The International. For example, according to a financial worksheet of the Debtor introduced into evidence, in 2004 the Debtor prepaid the annual dues to The International in the amount of $21,225.

Under a corporate membership, certain individuals designated by the corporate member could be approved for membership privileges at The International. Mark Belinsky, an employee of both the Debtor and PFI or a subsidiary, testified that he received such an individual membership when he was hired in 2003. The terms of his employment required him to reimburse the Debtor for $21,125 (roughly one-third) of the non-refundable portion of the membership deposit (namely 50% of the $125,000 membership deposit paid by the Debtor to The International). Mr. Belinsky testified these payments were made through deductions by the Debtor from commissions due him. Mr. Belinsky testified that the other two-thirds of the non-refundable portion of the membership deposit were required to be repaid to the Debtor by other employees who received individual memberships.

When the Debtor filed its Chapter 7 petition in this court on January 29, 2008, it listed in schedule B (personal property assets) under item 3 (security deposits) $62,500 in "dues" held by The International, which obviously refers to the refundable portion of the membership deposit.

**Discussion and Conclusion**

The Debtor and PFI have devoted much of their energies both at the pre-trial stage and at

3

trial tangling over which of them was the member of The International based on the misplaced belief that ownership of the right to the membership deposit refund necessarily followed the holder of the membership.  The testimony of Mr. Lynch of The International, however, was that there was no requirement that the owner of the refund right and the member of the country club be one and same.  Resort to a written document for clarification of this key issue has proven futile.  The only contract in evidence in this action is the Membership Agreement which is, to say the least, not a model of clarity.  It begins with the ambiguity discussed earlier as to the identity of the corporate member and deteriorates from there.  Much of the Agreement is written, from the perspective of the applicant, in the first person. For example, the last paragraph states:

> I hereby acknowledge that I have received, have read and understand the Bylaws and The International Rules and Regulations ("Rules and Regulations") applicable to this membership, which are incorporated herein by reference. If elected to membership, I hereby agree that my use of the Club and privileges under the membership are subject to the terms, conditions and restrictions set forth therein.

It is then signed by William Poutre individually. The section of the Membership Agreement governing refunds of the membership deposit states: "I elect to receive fifty percent (50%) of the Membership Deposit I paid for my membership upon sixty (60) days' notice to the Club." Despite these provisions, no one has asserted that Mr. Poutre individually is the member under the Membership Agreement or is entitled to the membership deposit refund.  While a credible argument has been made that PFI is the member for purposes of the Membership Agreement, the Agreement's terms simply do not support the conclusion that PFI is also the "I" referred to in the refund provision.

The Membership Agreement thus being as pellucid as a sandtrap and there being no other writing between the Debtor and PFI addressing the ownership of the membership deposit refund,

4

I must resort to extrinsic evidence to ascertain the intent of the parties.[1]

The evidence presented establishes that while, according to the records of The International, PFI was its corporate member, the Debtor assumed all financial obligations associated with that membership, including paying the membership deposit and annual dues. No evidence was presented to suggest that the parties treated the Debtor's paying these financial obligations as a loan or gift to PFI, which would have conferred on PFI indicia of ownership with respect to these payments. On the contrary, the evidence established that from 2003 through the date the Debtor initiated its Chapter 7 case, the Debtor considered itself exclusively obligated to pay the monetary obligations associated with membership in The International and considered itself the owner of the refund rights with respect to the membership deposit which it had paid.

The Debtor listed the right to the refund as an asset in the schedules accompanying its bankruptcy petition. In a financial worksheet of the Debtor entitled "Prepaid Expenses" dated April 20, 2004, the Debtor carried the annual dues to The International of $21,225 as a prepaid expense. Finally, the Debtor required repayment of the non-refundable portion of the membership deposit from Mr. Belinsky and other individual members who were employees of the Debtor.

PFI attempted to prove an inconsistency in the Debtor's position with respect to the deposit refund by introducing into evidence a June 2, 2008 letter from Mr. Pappas to Mr. Poutre in which Mr. Pappas acknowledged that "at all times" the membership rights to The International

---

[1] "Extrinsic evidence bearing upon the background and purpose of the parties, as well as their understanding of particular language used in a contract, may be considered in resolving uncertainties in applying a contract's terms." *AsymmetRx, Inc. v. Biocare Medical LLC*, 578 F.Supp.2d 333, 340 (D. Mass. 2008), *vacated and remanded on other grounds*, 582 F.3d 1314 (Fed. Cir. 2009).

5

were in the name of PFI. This letter carries very little weight, however. It is written by Mr. Pappas in his individual capacity and not as a representative of the Debtor (who was by then already a Chapter 7 debtor). It was written in the context of a confidential settlement of litigation involving Messrs. Poutre and Pappas. And finally, the letter addresses only the membership issue, not the ownership of the deposit refund right.

All the evidence taken together proves conclusively that the right to the refundable portion of the membership deposit was on the date of commencement of the Debtor's Chapter 7 case and all times prior thereto, property of the Debtor. I will, accordingly, enter judgment in this action in favor of the plaintiff on Count II of the Amended Complaint. No relief is necessary on Count I which seeks a turnover order against The International since The International has agreed to pay the refund to the prevailing party (the plaintiff) in this action. A separate order will issue.

Dated at Worcester in said District this 14th day of July, 2010.

By the Court,

_____
Melvin S. Hoffman
United States Bankruptcy Judge